# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 20-337 |
| ROBERT MCCABE | : | |

## GOVERNMENT'S GUILTY PLEA MEMORANDUM

I. **INTRODUCTION**

On or about September 30, 2020, the government filed a 20-count indictment charging defendant ROBERT MCCABE with five counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts One through Five), fifteen counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts Six through Twenty), and one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff (Count Twenty-One). Defendant MCCABE has indicated through counsel that he will plead open to the Court to all counts of the indictment.

II. **MAXIMUM PENALTIES**

A. **Mail Fraud and Wire Fraud (18 U.S.C. §§ 1341, 1343) (Counts One through Twenty)**

The maximum sentence for each violation of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud) is 20 years imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment.

B. **Securities Fraud (15 U.S.C. §§ 78j(b) and 78ff) (Count Twenty-One)**

The maximum sentence for securities fraud (provided for by 15 U.S.C. § 78ff) is 20 years' imprisonment, with a maximum fine of fine of $5,000,000. The maximum term of supervised release is three years, and there is a $100 special assessment.

C.   **Total Maximum Sentence**

The total statutory maximum sentence the defendant faces is 420 years' imprisonment, a three-year period of supervised release, a $10,000,000 fine, and a $2,100 special assessment. Full restitution, currently estimated by the government to be approximately $1,033,005, also shall be ordered. Forfeiture of any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such offenses, including, but not limited to, $1,033,005 in United States currency, also may be ordered.

III.   **ELEMENTS OF THE OFFENSES**

A.   **Mail Fraud (18 U.S.C. §§ 1341)**

To establish mail fraud, in violation of 18 U.S.C. § 1341, the government must prove the following essential elements beyond a reasonable doubt:

1.   The defendant knowingly devised a scheme to defraud, that is, to deprive another of money or property by fraud, including by false or fraudulent pretenses, representations or promises, or omissions, concerning a material fact;

2.   The defendant did so with the intent to defraud; and

3.   That in advancing, furthering, or carrying out the scheme, the defendant used the mails (or a private or commercial interstate carrier), or caused the mails (or a private or commercial interstate carrier) to be used.

3rd Circuit Model Jury Instruction 6.18.1341.

The government is not required to prove that the defendant actually mailed anything or intended that the mails would be used to further, or to advance, or to carry out the scheme. However, the government must prove beyond a reasonable doubt, that the mails (or a private or commercial interstate carrier) were, in fact, used in some manner to further, or to

advance, or to carry out the scheme to defraud. The government must also prove either that the defendant used the mails, or knew the use of the mails (private or commercial interstate carrier) would follow in the ordinary course of business or events, or should reasonably have anticipated that the mails (private or commercial interstate carrier) would be used.  See, e.g., 3rd Circuit Model Jury Instruction 6.18.1341-5.

  B. **Wire Fraud (18 U.S.C. §§ 1343)**

    To convict a defendant of wire fraud, the government must prove beyond a reasonable doubt the following elements:

    1. The defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises or willfully participated in such a scheme with knowledge of its fraudulent nature;

    2. The defendant acted with the intent to defraud; and

    3. That in advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.
See Third Circuit Model Jury (Criminal) Instructions 6.18.1343.

  C. **Securities Fraud (15 U.S.C. §§ 78j(b) and 78ff)**

    To establish securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, the government must prove the following essential elements beyond a reasonable doubt:

    1. That, in connection with the purchase or sale of a security, the defendant did any one or more of the following:  Employed a device, scheme, or artifice to defraud; made an untrue statement of a material fact or omitted to state a material fact which made what was

said under the circumstances misleading; or engaged in an act, practice, or course of business that operated or would operate as a fraud or deceit upon a purchaser or seller;

   2. That the defendant acted willfully, knowingly, and with the intent to defraud; and

   3. That the defendant used or caused to be used the facilities of a national securities exchange or any means or instrumentality of interstate commerce in furtherance of the fraudulent conduct.

See Jury Instructions in United States v. Georgiou, No. 09-88 (E.D. Pa.) (2/12/2010 Tr. at 28–29) (adapted). The Court of Appeals for the Third Circuit remarked favorably on the district court's instructions. See United States v. Georgiou, 777 F.3d 125, 137 (3d Cir. 2015) ("[T]he District Court properly instructed the jury on the elements of securities fraud pursuant to Section 10(b) and Rule 10b–5, including the jurisdictional elements relating to conduct in the United States."); 9th Cir. Model Jury Instruction 9.9 (2010).

  The term "security" means any note, stock, treasury stock, security future, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not

4

include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 U.S.C. § 78c(a)(10).

## IV. FACTUAL BASIS FOR PLEA

If this case were to proceed to trial, the government would prove the following, among other things:

Defendant MCCABE graduated from Lafayette College in 1967. During his time there, he was a member of the Phi Kappa Psi fraternity and remained very active in his fraternity throughout the years, including up to the present. One of his fraternity brothers in college, R.N. founded Esperion Therapeutics, Inc., a pharmaceutical company that developed Lipitor, the world-renowned cholesterol drug. MCCABE, and many of MCCABE's fraternity brothers, knew R.N. personally, and many others knew R.N. by name, reputation, and the fact that he was a Lafayette College Phi Kappa Psi alum. R.N. sold Esperion to Pfizer in 2004 for in excess of $1 billion. Pfizer eventually shuttered Esperion in 2006. In 2008, R.N. reacquired Esperion from Pfizer and began work to develop a sequel to Lipitor. R.N. took the new Esperion public in 2013 (it is publicly traded on the NASDAQ exchange under the ticker symbol "ESPR").

MCCABE was a stockbroker in the 1980s and worked for Drexel, Burnham, and Lambert. He was convicted in 1982 of conspiracy to transport securities and sentenced to three years in federal prison. After his release from prison, he formed "McCabe Properties, Inc.," a New Jersey corporation, along with another individual, for the purpose of purchasing a horse farm. Defendant MCCABE purchased blank stock certificates and a company seal upon the incorporation of McCabe Properties, Inc. In or about 1996, McCabe Properties, Inc. sold the

5

horse farm, and from that point forward McCabe Properties, Inc. had no legitimate business purpose and no assets. MCCABE held onto the blank stock certificates and literally put the company on a shelf, to be used again if he ever needed one. At the time referenced in the Information, MCCABE did not hold any valid license issued by FINRA or any state or regulatory authority that would allow him to serve as a broker, registered representative, or investment adviser.

Many of MCCABE's fraternity brothers knew that he had worked on Wall Street, and during the years, they would periodically call MCCABE for financial advice. In September 2010, MCCABE found himself in financial difficulty. His daughter was going to school in Chicago and was having mental health problems. When one of his old friends and fraternity brothers, victim J.S. asked MCCABE what he should do with an inheritance he had received, MCCABE saw an opportunity to defraud J.S. MCCABE told him that MCCABE had purchased "founders shares" of Esperion at the price of $2.67 per share, through his company, McCabe Properties, Inc. MCCABE offered to sell J.S. some of these shares. J.S. was his first victim.

In reality, there were no such "founders shares" and McCabe Properties, Inc. did not own any assets, let alone shares of Esperion. But MCCABE did have the blank stock certificates from McCabe Properties, Inc., that he had sitting on a shelf. So he took $22,000 from J.S. and he filled out one of the blank stock certificates to show that it was now 7,525 shares of McCabe Properties, Inc., and then he sent that stock certificate to J.S. via Federal Express. MCCABE represented to J.S. that by buying shares of McCabe Properties, Inc., J.S. was purchasing a corresponding one-to-one number of "founders shares" of Esperion at $2.67 per share.

MCCABE used the fact that R.N. was a former Phi Kappa Psi fraternity brother

from Lafayette College. All of MCCABE's fraternity brothers either personally knew R.N. or knew who he was and knew about R.N.'s development of Lipitor, and so when MCCABE claimed to have obtained new shares of the new iteration of Esperion, it was a lie that first J.S., and later other Phi Kappa Psi brothers, were quick to believe.

After MCCABE successfully defrauded J.S., he pushed the same lie to other fraternity brothers. As the scheme progressed, MCCABE fine-tuned the fraud scheme to include supposed restrictions on the ability to sell the shares. MCCABE informed his victims that McCabe Properties, Inc. had no other assets except for this batch of "founders shares" of Esperion, and that these shares were restricted and could not be sold unless and until Esperion was acquired by another pharmaceutical company – much like Esperion was acquired the first time by Pfizer. MCCABE informed his victims that if they ever got divorced, they had to sell their shares back to him for the same $2.67 price. In this way, MCCABE was able to tell his victims that new shares had become available – he would notify them that one of the existing shareholders had gotten divorced and so had to sell back their shares – which he then "offered" to the other existing victims for purchase. MCCABE also told his victims at times that a shareholder had passed away and their shares were now available for purchase by the remaining shareholders. In this way, MCCABE cultivated an exclusive club mentality among the victims, who would often jump at the chance to buy more shares that had "come available."

Between September 2010 and June 2020, defendant ROBERT MCCABE induced more than 50 investors to purchase these non-existent "founders shares" of Esperion, and induced them to transfer to him by check and wire transfer approximately $1,033,005 for the purchase of shares of McCabe Properties, Inc., on the expectation that they were purchasing a corresponding amount of "founders shares" of Esperion. MCCABE deposited the funds into a

bank account he controlled at Wells Fargo in the name of McCabe Properties, and he then withdrew the money and spent it. Upon receiving the funds, MCCABE would fill out a blank stock certificate for McCabe Properties, Inc., listing the name of the shareholder and the number of shares. MCCABE then would send the stock certificates to the victims via Federal Express. MCCABE admits that each of the acts set forth in the Manner and Means Section of Counts One through Five of the Information was committed by MCCABE during and in furtherance of the fraud scheme.

MCCABE would remain in touch with the victims through the years, and would send them emails with updates on how well Esperion was doing, press releases, financial analysis, etc. He also crafted a series of lies to stall the victims when they would press for the sale of the stock. At the time of the filing of the charges in this case, the publicly traded share price of Esperion was more than $37 per share – meaning most of his victims thought their investments had increased more than 13-fold. One of the most recent lies MCCABE told was that when McCabe Properties, Inc. acquired their "founders shares" of Esperion, they did so through Michael Milken's firm, which was casting a cloud over the ability to liquidate the shares. Ultimately, MCCABE's victims started to get suspicious that this was a scam. In June 2010, one of his victims recorded a phone call with MCCABE in which he confronted MCCABE about his suspicions, and ultimately, during the call, MCCABE admitted that he had been lying all along.

Each of the mail fraud counts charged in the Information (Counts One through Five) are based on FedEx mailings MCCABE sent to victims containing their stock certificates. MCCABE admits that each of these mailings was made by MCCABE during and in furtherance of the fraud scheme.

| COUNT | DATE (Approx.) | FROM | TO | DESCRIPTION OF ITEM |
|---|---|---|---|---|
| ONE | 3/10/17 | Bangor, Pennsylvania | Honolulu, Hawaii | Federal Express package containing approximately 1,500 worthless shares of McCabe Properties, Inc. shipped by defendant ROBERT MCCABE to victim K.T. |
| TWO | 10/16/17 | Bangor, Pennsylvania | La Habra, California | Federal Express package containing approximately 7,490 worthless shares of McCabe Properties, Inc. shipped by defendant ROBERT MCCABE to victims S.L. and K.L. |
| THREE | 10/16/17 | Bangor, Pennsylvania | Honolulu, Hawaii | Federal Express package containing approximately 1,123 worthless shares of McCabe Properties, Inc. shipped by defendant ROBERT MCCABE to victim R.Sa. |
| FOUR | 1/30/18 | Bangor, Pennsylvania | Sparrows Point, Maryland | Federal Express package containing approximately 11,825 worthless shares of McCabe Properties, Inc. shipped by defendant ROBERT MCCABE to victim M.O. |
| FIVE | 2/28/20 | Bangor, Pennsylvania | Honolulu, Hawaii | Federal Express Package containing approximately 1,800 worthless shares of McCabe Properties, Inc. shipped by defendant ROBERT MCCABE to victim R.Sa. |

The 15 wire fraud counts (Counts 6 through 20) are based mostly on emails MCCABE sent to victims. Each one of the emails went to one or more victims located in another states, and MCCABE admits that they were sent from his home in the Eastern District of Pennsylvania.

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| SIX | 1/13/16 | Email sent by defendant ROBERT MCCABE from the Eastern District of Pennsylvania to approximately 37 victims, including victim D.F. in New York, victim R.Sa. in Hawaii, and victim G.T. in New Jersey, in which defendant MCCABE provided information about the Pharmaceutical Company. |
| SEVEN | 5/4/16 | Email sent by defendant ROBERT MCCABE from the Eastern District of Pennsylvania to victim G.T. in New Jersey, in which defendant MCCABE provided information about the Pharmaceutical Company. |
| EIGHT | 8/4/16 | Email sent by defendant ROBERT MCCABE from the Eastern District of Pennsylvania to approximately 37 victims and potential investors, including victim D.F. in New York, victim R.Sa. in Hawaii, and victim G.T. in New Jersey, in which defendant MCCABE provided information about the Pharmaceutical Company. |
| NINE | 11/5/16 | Email sent by defendant ROBERT MCCABE from the Eastern District of Pennsylvania to approximately 50 victims and potential investors, including victim D.F. in New York, victim R.Sa. in Hawaii, and victim G.T. in New Jersey, in which defendant MCCABE provided information about the Pharmaceutical Company. |
| TEN | 1/15/17 | Email sent by defendant ROBERT MCCABE from the Eastern District of Pennsylvania to approximately 50 victims and potential investors, including victim D.F. in New York, victim R.Sa. in Hawaii, and victim G.T. in New Jersey, in which defendant MCCABE provided information about the Pharmaceutical Company. |
| ELEVEN | 3/6/17 | Email sent by defendant ROBERT MCCABE from the Eastern District of Pennsylvania to victim R.Sa. in Hawaii, in which defendant MCCABE agreed to sell shares of McCabe Properties, Inc. to victim R.Sa.'s partner, victim K.T., and to send the stock certificates via Federal Express to victim K.T. in Hawaii. |

| COUNT | DATE | DESCRIPTION |
| --- | --- | --- |
| TWELVE | 6/26/17 | Email sent by defendant ROBERT MCCABE from the Eastern District of Pennsylvania to approximately 50 victims and potential investors, including victim D.F. in New York, victim R.Sa. in Hawaii, and victim G.T. in New Jersey, in which defendant MCCABE provided information about the Pharmaceutical Company. |
| THIRTEEN | 8/10/17 | Email sent by defendant ROBERT MCCABE from the Eastern District of Pennsylvania to approximately 50 victims and potential investors, including victim D.F. in New York, victim R.Sa. in Hawaii, and victim G.T. in New Jersey, in which defendant MCCABE provided information about the Pharmaceutical Company and in which he urged the victims to "have patience." |
| FOURTEEN | 10/9/17 | Email sent by defendant ROBERT MCCABE to victim S.L. in California, in which defendant MCCABE provided information about the Pharmaceutical Company and instructions on how to wire money to defendant MCCABE for the purchase of shares of McCabe Properties, Inc. |
| FIFTEEN | 1/11/18 | Email sent by defendant ROBERT MCCABE from the Eastern District of Pennsylvania to approximately 50 victims and potential investors, including victim D.F. in New York, victim R.Sa. in Hawaii, and victim G.T. in New Jersey, in which defendant MCCABE provided information about the Pharmaceutical Company and in which he urged the victims to exercise "patience." |
| SIXTEEN | 1/25/18 | Email sent by defendant ROBERT MCCABE from the Eastern District of Pennsylvania to potential investor H.C. in New Jersey, in which defendant MCCABE falsely stated that McCabe Properties, Inc. was "a private holding company" the only assets of which were "founders shares" of the Pharmaceutical Company, which McCabe Properties, Inc. can only sell when the Pharmaceutical Company is acquired by another company, which was likely to happen in 2019, and in which defendant MCCABE offered to sell shares of McCabe Properties, Inc. to H.C. for approximately $2.67 per share. |

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| SEVENTEEN | 9/20/18 | Email sent by defendant ROBERT MCCABE from the Eastern District of Pennsylvania to approximately 50 victims and potential investors, including victim D.F. in New York, victim R.Sa. in Hawaii, and victim G.T. in New Jersey, in which defendant MCCABE indicated that he had approximately 19,663 shares of McCabe Properties, Inc., corresponding to an equal number of shares of the Pharmaceutical Company, available for sale on a first come, first served basis, due to the death of one of the original investors in McCabe Properties, Inc. |
| EIGHTEEN | 9/21/18 | Email sent by defendant ROBERT MCCABE from the Eastern District of Pennsylvania to victim Z.A.L. in New York, in which defendant MCCABE indicated that he had approximately 10,487 shares of McCabe Properties, Inc., remaining for sale, and offered to sell all or part of them to victim Z.A.L. |
| NINETEEN | 5/6/20 | Email sent by defendant ROBERT MCCABE from the Eastern District of Pennsylvania to approximately 50 victims and potential investors, including victim D.F. in New York, victim R.Sa. in Hawaii, and victim G.T. in New Jersey, in which defendant MCCABE provided information about the Pharmaceutical Company's first quarter earnings. |
| TWENTY | 6/7/20 | Email sent by defendant ROBERT MCCABE from the Eastern District of Pennsylvania to victim M.W. in New Jersey in which defendant MCCABE falsely claimed that McCabe Properties, Inc.'s investment in the Pharmaceutical Company was made approximately 12 years prior through a firm owned by a known financial fraudster, but the investment was legitimate, and defendant MCCABE expected that McCabe Properties, Inc. would be able to sell its shares of the Pharmaceutical Company by the end of the 2020. |

Count 21 charges securities fraud. As stated above, MCCABE used manipulative and deceptive devices by employing a scheme to defraud, making untrue statements of material fact, omitting to state material facts, and engaging in acts, practices, and courses of business which operated as a fraud and deceit upon investors and potential investors by use of the means and instrumentalities of interstate and foreign commerce and the mails. The securities here were

the shares of McCabe Properties Inc. MCCABE transferred most of the shares through interstate commerce by having them shipped by Federal Express to his unsuspecting victims, who did not know they were purchasing worthless securities.

V.    **PLEA AGREEMENT**

        The parties have entered into a plea agreement in this case, a copy of which is being submitted to the Court.

        Respectfully submitted,

        WILLIAM M. McSWAIN
        United States Attorney


        /s/ Michael S. Lowe
        MICHAEL S. LOWE
        Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Guilty Plea Memorandum has been served by e-mail upon:

Gary N. Asteak
726 Walnut Street
Easton, PA 18042
asteaklaw@gmail.com

/s/
_____
MICHAEL S. LOWE
Assistant United States Attorney

DATED:   October 29, 2020